Penelope Parmes (State Bar No. 104774)
Eric J. Fromme (State Bar No. 193517)
Caroline R. Djang (State Bar No. 216313)
RUTAN & TUCKER, LLP
611 Anton Boulevard, Fourteenth Floor
Costa Mesa, California 92626-1931
Telephone: 714-641-5100
Facsimile: 714-546-9035

Attorneys for Secured Creditor
California Bank & Trust, as assignee of
the FDIC, receiver of Vineyard Bank, N.A.

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| In re<br><br>CORTE DE ROSA HOMES, LLC,<br><br>Debtor. | Case No. 11-53334<br><br>**EXHIBIT A TO ORDER AUTHORIZING EXAMINATION OF DEBTOR AND PRODUCTION OF DOCUMENTS PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 2004**<br><br>**[NO HEARING REQUIRED]** |

### Exhibit A

### REQUEST FOR PRODUCTION OF DOCUMENTS UNDER RULE 2004

### DEFINITIONS

1. The term "Debtor" shall mean Corte de Rosa Homes, LLC.

2. The term "CBT" shall mean California Bank & Trust, as assignee of the FDIC, receiver for Vineyard Bank, N.A.

3. The term "PROPERTY" shall mean the real property commonly described as Corte de Rosa, San Jose, California 95101 in Santa Clara County (APN 575-16-053).

4. The term "APTOS PROPERTY" shall mean the real property commonly known as Beach Drive, Aptos, California in Santa Cruz County (APN 043-161-53)

5. The term "VINEYARD" shall mean Vineyard Bank, N.A.

6. The term "DOCUMENT[S]" shall be synonymous in meaning and equal in scope to the usage of this term in Federal Rule of Civil Procedure 34(a), including, without limitation, electronic or computerized data compilations. A draft or non-identical copy is a separate document within the meaning of this term.

7. The term "ELECTRONIC DATA" as used herein shall refer to all files and records kept by electronic means, electronic files, all text files (including word processing documents), spread sheets, and email, and information concerning email (including logs of email history and usage, header information, and "deleted" files), internet history files and preferences, graphical image files (including ".JPG, .GIF, .BMP, and TIFF" files), databases, calendar and scheduling information, computer system activity logs, and all file fragments, backup files and archives containing electronically stored information. ELECTRONIC DATA includes, but is not limited to, data stored on standalone personal computers, computer workstations, network workstations, network servers, email servers, and notebook and/or laptop computers, back-up tapes, disks, hard drives, flash drives, RAM memory, and/or other media capable of storing electronic information.

8. The term "COMMUNICATION[S]" shall mean means the transmittal of information (in the form of facts, ideas, inquiries or otherwise).

9. IDENTIFY (with respect to persons). When referring to a person, "to identify" means to give, to the extent known, the person's full name, present or last known address, and when referring to a natural person, additionally, the present or last known place of employment. Once a person has been identified in accordance with this subparagraph, only the name of that person need be listed in response to subsequent discovery requesting the identification of that person.

10. IDENTIFY (with respect to documents). When referring to documents, "to identify" means to give, to the extent known, the (i) type of document; (ii) general subject matter; (iii) date of the document; and (iv) author(s), addressee(s) and recipient(s).

11. PARTIES. The terms "plaintiff" and "defendant" as well as a party's full or

abbreviated name or a pronoun referring to a party mean the party and, where applicable, its officers, directors, employees, partners, corporate parent, subsidiaries or affiliates. This definition is not intended to impose a discovery obligation on any person who is not a party to the bankruptcy case.

12. PERSON. The term "person" is defined as any natural person or any business, legal or governmental entity or association.

13. CONCERNING. The term "concerning" means relating to, referring to, describing, evidencing or constituting.

14. The following rules of construction apply to all discovery requests:

   a. ALL/EACH. The terms "all" and "each" shall be construed as all and each.

   b. AND/OR. The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

   c. NUMBER. The use of the singular form of any word includes the plural and vice versa.

## DOCUMENTS AND THINGS TO BE PRODUCED

1. IDENTIFY Timothy G. McNeil.
2. IDENTIFY Gregory K. Howell.
3. IDENTIFY all employees of the Debtor.
4. IDENTIFY any persons or entities who made offers to purchase the Property from August 2007 to the present.
5. All DOCUMENTS and ELECTRONIC DATA CONCERNING the formation of the Debtor.
6. All DOCUMENTS and ELECTRONIC DATA CONCERNING the governance and management of the Debtor.
7. All COMMUNICATIONS CONCERNING the management of the Debtor.
8. All DOCUMENTS and ELECTRONIC DATA CONCERNING the

operations of the Debtor.

9. All DOCUMENTS and ELECTRONIC DATA CONCERNING any lien asserted against the Property.

10. All DOCUMENTS and ELECTRONIC DATA CONCERNING any debts owing by the Debtor to CBT.

11. All COMMUNICATIONS CONCERNING any debt owed by the Debtor to CBT.

12. All DOCUMENTS and ELECTRONIC DATA CONCERNING the Debtor's use of the proceeds of the loan from CBT to the Debtor from August 2007 to the present.

13. All DOCUMENTS and ELECTRONIC DATA CONCERNING the Debtor's financial statements, including balance sheets, income statements, general ledgers, federal tax returns and state tax returns.

14. All monthly account statements for any deposit account held by or for the benefit of the Debtor.

15. All monthly account statements for any deposit account used by or for the benefit of the Debtor.

16. Any contracts to which the Debtor was a party.

17. All DOCUMENTS and ELECTRONIC DATA CONCERNING the value of the PROPERTY from August 2007 to the present, including any appraisal of the PROPERTY.

18. All COMMUNICATIONS CONCERNING the value of the PROPERTY from August 2007 until the present.

19. All DOCUMENTS and ELECTRONIC DATA CONCERNING any insurance policy protecting any portion of the PROPERTY from August 2007 until the present.

20. All DOCUMENTS and ELECTRONIC DATA CONCERNING any insurance policy naming the Debtor as an insured party from August 2007 until the present.

21.   All DOCUMENTS and ELECTRONIC DATA CONCERNING any application submitted by the Debtor to obtain credit or financing of any kind from August 2007 until the present.

22.   All DOCUMENTS and ELECTRONIC DATA CONCERNING the development of the PROPERTY, including but not limited to architectural plans, blueprints, permits, approvals and designs.

23.   All COMMUNICATIONS CONCERNING the development of the PROPERTY, including, but not limited to architectural plans, blueprints, permits, approvals and designs.

24.   All DOCUMENTS and ELECTRONIC DATA CONCERNING the sale of the PROPERTY.

25.   All COMMUNICATIONS CONCERNING the sale of the PROPERTY.

26.   All DOCUMENTS and ELECTRONIC DATA CONCERNING the lease of the PROPERTY.

27.   All COMMUNICATIONS CONCERNING the lease of the PROPERTY.

28.   All COMMUNICATIONS between the Debtor and any person or entity asserting an ownership interest in any portion of the PROPERTY.

29.   All DOCUMENTS and ELECTRONIC DATA CONCERNING the Debtor's allegation in the Status Report that CBT's predecessor Vineyard agreed to provide a construction loan once the Property was ready for construction.

30.   All COMMUNICATIONS between the Debtor and Vineyard in which agreed to provide a construction loan once the Property was ready for construction.

31.   All DOCUMENTS and ELECTRONIC DATA CONCERNING the Debtor's allegations in the Status Report regarding Vineyard's reasons for the structure of the deeds of trust on the PROPERTY AND THE APTOS PROPERTY, *i.e.* "including so Corte de Rosa and/or Howell & McNeil could sell the properties separately and, in the case of the Howell & McNeil property, the property could be sold and such net funds used to make monthly payments to Vineyard Bank while the Corte property was under development."

32. All COMMUNICATIONS between the Debtor and Vineyard CONCERNING Vineyard's reasons for the structure of the deeds of trust on the PROPERTY AND THE APTOS PROPERTY, *i.e.* "including so Corte de Rosa and/or Howell & McNeil could sell the properties separately and, in the case of the Howell & McNeil property, the property could be sold and such net funds used to make monthly payments to Vineyard Bank while the Corte property was under development."

33. All DOCUMENTS and ELECTRONIC DATA CONCERNING Vineyard's alleged refusal to honor its verbal commitment to make a construction loan to the Debtor.

34. All COMMUNICATIONS between the Debtor and Vineyard CONCERNING Vineyard's alleged refusal to honor its verbal commitment to make a construction loan to the Debtor.

35. All DOCUMENTS and ELECTRONIC DATA CONCERNING the Debtor and Howell & McNeil's alleged efforts to persuade Vineyard and CBT to honor its alleged construction loan commitment.

36. All COMMUNICATIONS between the Debtor and Vineyard CONCERNING the Debtor and Howell & McNeil's alleged efforts to persuade Vineyard and CBT to honor its alleged construction loan commitment.

37. All DOCUMENTS and ELECTRONIC DATA CONCERNING the Debtor and Howell & McNeil's alleged efforts to secure payoff amounts from Vineyard and CBT.

38. All COMMUNICATIONS between the Debtor and Vineyard CONCERNING CBT's alleged refusal to timely provide payoff amounts to the Debtor and Howell & McNeil.

39. All DOCUMENTS and ELECTRONIC DATA CONCERNING all alleged offers to purchase the Property, including, but not limited to the offers of $2.2 million, $2.4 million, and $2.9 million, as asserted in Howell & McNeil's Status Report (the "***Alleged Offers***").

40. All COMMUNICATIONS CONCERNING all alleged offers to purchase the Property, including, but not limited to the Alleged Offers.

41. All DOCUMENTS and ELECTRONIC DATA CONCERNING citations issued for failing to maintain the Property.

42. All DOCUMENTS and ELECTRONIC DATA CONCERNING any liens on the Property.

43. All DOCUMENTS and ELECTRONIC DATA CONCERNING Debtor's relationship to holders of liens encumbering the Property.

44. All DOCUMENTS and ELECTRONIC DATA CONCERNING Debtor's relationship to guarantors on CBT's loan, if any.

45. All DOCUMENTS and ELECTRONIC DATA CONCERNING any other information CONCERNING any of the allegations in the Status Report.

46. All COMMUNICATIONS CONCERNING any other information concerning any of the allegations in the Status Report.

47. All DOCUMENTS and ELECTRONIC DATA CONCERNING any efforts by the Debtor to obtain funds from investors or lenders from August 2007 to the present.

48. All COMMUNICATIONS CONCERNING efforts to obtain funds from investors or lenders from August 2007 to the present.

49. All DOCUMENTS and ELECTRONIC DATA CONCERNING the Debtor's efforts to reorganize and/or restructure its debts under chapter 11 of the Bankruptcy Code.

50. All DOCUMENTS and ELECTRONIC DATA CONCERNING any code violations issued by any governmental entity against the PROPERTY.

51. All COMMUNICATIONS CONCERNING any code violations issued by any governmental entity against the PROPERTY.