Penelope Parmes (State Bar No. 104774)
pparmes@rutan.com
Eric J. Fromme (State Bar No. 193517)
efromme@rutan.com
Caroline R. Djang (State Bar No. 216313)
cdjang@rutan.com
RUTAN & TUCKER, LLP
611 Anton Boulevard, Fourteenth Floor
Costa Mesa, California 92626-1931
Telephone: 714-641-5100
Facsimile: 714-546-9035

Attorneys for Secured Creditor
California Bank & Trust, as assignee of
the FDIC, receiver of Vineyard Bank, N.A.

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| In re<br><br>CORTE DE ROSA HOMES, LLC,<br><br>Debtor. | Case No. 11-53334<br><br>**LIMITED OPPOSITION TO MOTION TO SELL REAL PROPERTY FREE AND CLEAR OF LIENS AND PAY ASSOCIATED COSTS OF SALE**<br><br>Date: September 26, 2011<br>Time: 3:30 p.m.<br>Location:<br>United States Bankruptcy Court<br>280 South 1st St.<br>San Jose, CA 95113<br>Judge: Honorable Stephen L. Johnson |

TO THE HONORABLE STEPHEN L. JOHNSON, UNITED STATES BANKRUPTCY JUDGE, THE DEBTOR, THE OFFICE OF THE UNITED STATES TRUSTEE, ALL PARTIES-IN-INTEREST, AND THEIR RESPECTIVE COUNSEL:

Secured creditor California Bank & Trust, as assignee of the FDIC, receiver of Vineyard Bank, N.A., ("***CBT***") hereby submits its Limited Opposition to the Motion to Sell Real Property Free and Clear of Liens and Pay Associated Costs of Sale (the "***Motion***"), filed by the debtor and debtor in possession herein, Corte de Rosa Homes, LLC ("***Debtor***").

Rutan & Tucker, LLP
attorneys at law

-1-
LIMITED OPPOSITION TO MOTION TO SELL REAL PROPERTY FREE
AND CLEAR OF LIENS

2213914.1 a09/22/11

Case: 11-53334    Doc# 74    Filed: 09/22/11    Entered: 09/22/11 16:24:34    Page 1 of 8

# I. INTRODUCTION

While CBT does not oppose the sale of the real property commonly known as Corte de Rosa located in San Jose, County of Santa Clara, California (APN 575-16-053) (the "*Property*"), CBT does oppose the Debtor's proposed distribution of the proceeds of the sale. Debtor proposes to sell the Property free and clear of all liens pursuant to 11 U.S.C. § 363(f), but proposes to limit CBT's distribution from the sale proceeds to only $1,715,000.00. The Debtor asserts that this amount represents CBT's secured claim, as evidenced by that Deed of Trust dated August 9, 2007, recorded on September 20, 2007 as Document Number 19591479 in the Office of the Recorder of Santa Clara County, California (the "*Deed of Trust*").

Pursuant to relevant case law in this District and in this Circuit, CBT's distribution should not be limited to the amount in the Deed of Trust. As set forth below and in CBT's relief from stay motion filed in this case, the Debtor currently owes CBT over $3,472,540, with $2,298,517.55 owing under the Deed of Trust and $1,174,023.68 owing under an additional deed of trust encumbering real property owned by related debtor, Howell and McNeil Development, LLC ("*Howell & McNeil*"). Because the full amount of CBT's claim well exceeds the proposed purchase price proposed in the Motion for the Property, the Property cannot be sold free and clear of all liens pursuant to § 365(f) without the consent of CBT. Nonetheless, CBT does not oppose proposed sale, which is scheduled to close on October 24, 2011, so long as CBT is distributed the full amount of the sale proceeds, subject to disgorgement.

In addition, the Debtor has not met the evidentiary standard for a good faith finding pursuant to § 363(m). Conclusory statements and "boilerplate" language are insufficient to provide the buyer with § 363(m) safe harbor protection. For the reasons set forth herein, the Motion cannot be granted.

# II. RELEVANT FACTS

On or about August 9, 2007, Vineyard Bank, N.A. ("*Vineyard*"), as lender, made a commercial real estate secured loan to the Debtor in the sum of $2,592,500 as evidenced

by a Promissory Note dated August 9, 2007 (the "*Note*"). The maturity date of the Loan was August 9, 2008. In addition to the Note, on or about August 9, 2007, the Debtor executed a Business Loan Agreement setting forth further terms and conditions of the loan. Debtor executed and delivered to Vineyard the Deed of Trust executed by the Debtor, as trustor, conveying to Vineyard a first priority security interest in the Property as security for repayment of the Note. CBT's interest in the Note and related documents is evidenced by an Allonge and Assignment transferring the Note and related documents to CBT. The Deed of Trust represents 66% of the total amount owing under the Note.

An additional deed of trust was delivered to Vineyard, which was executed by related debtor, Howell & McNeil, as trustor, conveying to Vineyard a first priority security interest in certain real property commonly known as Beach Drive, Aptos, California, Assessor's Parcel Number 043-161-53, located in Santa Cruz County, California (the "*Aptos Property*"), as security for repayment of the Note in the amount of $877,500 (the "*Aptos Deed of Trust*"). The deed of trust, dated August 9, 2007, was recorded on September 20, 2007 as Document Number 2007-0050135 in the Office of the Recorder of Santa Cruz County, California. The Aptos Deed of Trust represents about 34% of the amount owing under the Promissory Note.

The total amount owing under the Note as of the Petition Date was approximately $3,472,540, with $2,298,517.55 owing under the Deed of Trust and $1,174,023.68 owing under the Aptos Deed of Trust.

As of August 22, 2011, the total amount owing under the Note was $3,643,999.84, with $2,411,769.15 owing under the Deed of Trust and $1,232,230.69 owing under the Aptos Deed of Trust.

### III. A SALE OF THE PROPERTY "FREE AND CLEAR" IS NOT PERMITTED BECAUSE THE FACE AMOUNT OF CBT'S CLAIM EXCEEDS THE PROPOSED SALE PRICE.

A sale may be free of liens if "the price at which the property is to be sold is greater than the aggregate value of all liens on such property." 11 U.S.C. § 363(f)(3).

Rutan & Tucker, LLP
attorneys at law

-3-
LIMITED OPPOSITION TO MOTION TO SELL REAL PROPERTY FREE
AND CLEAR OF LIENS

2213914.1 a09/22/11

Case: 11-59334   Doc# 74   Filed: 09/22/11   Entered: 09/22/11 16:24:34   Page 3 of 8

Construction of the phrase "the aggregate value of all liens" has sharply divided the courts. 3 COLLIER ON BANKRUPTCY, ¶ 363.06[4] (16th Ed.). One line of authority holds that the "aggregate value of all liens" means the actual economic value of the liens, or the "value" of the lien as determined under section 506(a). *See, e.g. In re Beker Indus., Inc.*, 63 B.R. 474, 477 (Bankr. S.D.N.Y. 1986). Other courts, including the Ninth Circuit Bankruptcy Appellate Panel, and a court in this District, have held that the sale price must exceed the face amount of all liens. *See, e.g., Clear Channel Outdoor, Inc. v. Knupfer (In re PW, LLC)*, 391 B.R. 25, 41 (B.A.P. 9th Cir. 2008) ("As a result, we join those courts cited above that hold that § 363(f)(3) does not authorize the sale free and clear of a lienholder's interest if the price of the estate property is equal to or less than the aggregate amount of all claims held by creditors who hold a lien or security interest in the property being sold.")

Furthermore, the bankruptcy court in this District refused to allow a sale free and clear of all liens because the full amount of the secured creditor's claim exceeded the sale price. *In re Canonigo*, 276 B.R. 257, 262 (Bankr. N.D. Cal. 2002). In *Canonigo*, the debtor listed his residence on Schedule A, valuing it at $512,000. On Schedule D, the debtor listed Washington Mutual Bank (the "***Bank***") as holding a first deed of trust against the debtor's residence, securing a claim of $480,000. The debtor filed a motion seeking authority to sell the residence free and clear of the Bank's lien for $505,000 (the "***Sale Motion***"). In the Sale Motion, the debtor represented that the **balance due** on the Bank's claim was $519,725.34. In addition, the debtor represented that there were closing and repair costs totaling approximately $36,000 and unpaid real estate taxes of approximately $4,000, all of which would have to be paid before any payment was made on the Bank's claim. Thus, if the sale were authorized, the Bank would have received payment of only approximately $465,000.

Based on the reasoning favored by "leading bankruptcy law treatises," the court in *Canonigo* denied the debtor's motion to sell the residence free and clear of the bank's lien because the sale price was insufficient to pay the "full face amount of the bank's claim." *Canonigo*, 276 B.R. at 266. The court explained:

> However, policy reasons cannot defeat the plain language of the statute. Although the word "value" is ambiguous, as used in section 363(f)(3), the word "greater" is not. Assuming the sale price determines the value of the property to be sold, the sale price for overencumbered property can never be greater than the aggregate economic value of the liens on the property. For example, if property encumbered by a senior lien securing a debt of $75,000 and a junior lien securing a debt of $50,000 is proposed to be sold for $100,000, the aggregate economic value of the liens is $100,000. If someone overbids and proposes to buy the property for $125,000, the aggregate economic value of the liens would increase to $125,000.
>
> The only way the sale price could be greater than the aggregate economic value of the liens is if the sale price also exceeded the face amount of the claims secured by the liens. For example, if the property were sold for $150,000, the aggregate economic value of the liens would still only be $125,000. As a consequence, the Court has no choice but to adopt the minority view: *i.e.*, that **the phrase "the aggregate value of the liens" means the full face amount of the claims secured by the liens.**

*Id.* at 262–63 (emphasis added). In its analysis of value of the claim, the court in *Canonigo* clearly considered the total balance due ($519,725.34), and not the amount on the deed of trust ($480,000), as the proposed purchase price of $505,000 obviously exceeds the amount on the deed of trust, but not the total balance due.

Similarly, in *Criimi Mae Servs. Ltd. P'ship v. WDH Howell, LLC (In re WDH Howell, LLC)*, 298 B.R. 527 (D.N.J. 2003), the court denied a debtor's sale motion free and clear because the sale price was exceeded by the secured creditor's claim, **which included principal, interest, fees, and costs**. *Criimi Mae*, 298 B.R. at 528. The face amount of the note was $9,000,000 (*Id.* at 528), but the court considered the total balance due to the secured creditor, Criimi Mae, which was $11,882,560.92, in its analysis. The court explained:

> Assuming the auction in this case was fair and adequate, the economic value of the property at the time of the sale to Dwek was $8,380,000.00. [citations omitted] Because the property is overencumbered, the aggregate economic value of all liens on the property is also $8,380,000.00 and, therefore, not less than the sale price. **The aggregate face value of the claim secured by Criimi Mae's lien was $11,882,560.92 as of the petition date and, thus, greater than the sale price.** [citations omitted] Accordingly, the sale free and clear of all liens, claims, and encumbrances was inappropriate under both the economic value and face value approaches. In light of this inevitable outcome, we conclude that Congress must have meant face value when it stated "value" in

Rutan & Tucker, LLP
attorneys at law
2213914.1 a09/22/11

§ 363(f)(3).

(*Id.* at 533–34.) (emphasis added).

As in *Canonigo* and *Criimi Mae*, the balance due on CBT's claim ($2,298,517.55) well exceeds the sale price ($2,000,000) for the Property proposed in the Motion. In determining the amount of the claim for purposes of § 363(f), courts consider the entire balance due to the secured creditor, including interest, fees and costs, and not just the original loan amount or the amount listed on the face of the deed of trust. Thus, according to the law in this District, this Circuit, and other persuasive authority, the sale cannot be approved free and clear of all liens.

Moreover, the Debtor's interpretation of § 363(f) would undoubtedly lead to an absurd result. If a secured creditor's distribution from sale proceeds were limited to the amount listed in its deed of trust, a borrower could hypothetically receive loan proceeds, and never pay a dime on the loan, resulting in the accrual of late fees, interest, costs, etc. But under the Debtor's interpretation, the secured creditor would be limited to the amount of the distribution under the loan, even if the sale of the property well exceeds the amount of the total balance due on the secured creditor's claim! This interpretation renders the other financial terms of the loan, such as the accrual of interest, late fees, and costs meaningless. Such a result is unfair, absurd, and flies in the face of the principles of real estate and secured transactions law.

Thus, CBT will consent to a sale free and clear of its lien if it receives **all** of the sale proceeds of the Property.

## IV. A GOOD FAITH FINDING IS NOT JUSTIFIED.

Except for some canned, non-specific language contained in the Declaration of Gregory Howell ("*Howell Decl.*"), there is no evidence to support a good faith finding pursuant to § 363(m). Although the Bankruptcy Code does not define "good faith purchaser," courts have adopted a traditional equitable definition: "one who purchases the assets for value, in good faith and without notice of adverse claims." *In re M Capital Corp.* 290 B.R. 743, 746 (B.A.P. 9th Cir. 2003) (good faith purchaser is one who buys "in

good faith" and "for value"). A sale order containing a "boilerplate" good faith finding without evidentiary support is insufficient to provide the buyer with § 363(m) safe harbor protection. *In re Fitzgerald*, 428 B.R. 872, 883 (B.A.P. 9th Cir. 2010) (appeal of order authorizing sale of debtor's cause of action to target defendant that contained "boilerplate" good faith finding not moot where trustee did not request good faith finding and no evidence was presented on that issue).

Here, Mr. Howell makes several unsupported statements in his declaration, *e.g.*, "Debtor submits that the Purchase Agreement and the identified sale is for fair value, in the best interest of creditors, fair and reasonable, and in good faith." (Howell Decl. at ¶ 21.) There is no support for this conclusory statement. In fact, considering Mr. Howell's statements in the very same declaration that the Debtor has received offers to purchase the Property for "$2.2 million, $2.4 million, $2.75 million, and $2.9 million," (*Id.* at ¶ 13) it is doubtful that the proposed purchase price of $2 million is for fair value and in the best interest of creditors. According to Mr. Howell, the proposed purchase price could be as much as $900,000 below market.

In addition, Mr. Howell mentions the Debtor's alleged marketing efforts, but provides no evidence to support the alleged efforts, *e.g.* listing agreement, MLS listing, or the names of potential buyers that Mr. Howell and the unnamed broker allegedly contacted. Mr. Howell merely states, "Debtor, directly and/or through its broker agent, marketed The Property by, among other things, contacting various investors, developers, and other parties that may have previously indicated an interest in The Property, conducting preliminary research regarding The Property to assist in the marketing and selling of The Property, and evaluating potential sale opportunities of The Property." (*Id.*) Mr. Howell's statement is "boilerplate" and lacks any specifics. Thus, the evidentiary record is insufficient for the Court to make a § 363(m) finding.

## V. CONCLUSION

For the foregoing reasons, the Court cannot approve a sale free and clear of all liens pursuant to § 363(f). The result urged by the Debtor, limiting CBT's distribution of sale

proceeds to the amount in the Deed of Trust, is an absurd and unfair result. CBT will consent to a sale free and clear of liens, provided that all sale proceeds are distributed to CBT. Moreover, the Debtor has not presented sufficient evidence for this Court to make a good faith finding pursuant to § 363(m). Based thereon, the Court must deny the Motion, or allow the sale, subject to the conditions set forth in this Limited Opposition.

Dated: September 22, 2011

Respectfully submitted

RUTAN & TUCKER, LLP

By: _____*/s/ Eric J. Fromme*_____
    Eric J. Fromme
    Caroline R. Djang
    Attorneys for Creditor
    California Bank & Trust